Matter of Gainsburg
2026 NY Slip Op 02838
May 6, 2026
Appellate Division, Second Department
Per Curiam
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Barry Robert Gainsburg, a suspended attorney. Grievance Committee for the Tenth Judicial District, petitioner; Barry Robert Gainsburg, respondent. (Attorney Registration No. 2612463)

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on May 6, 2026
2023-07864
Hector D. Lasalle, P.J.
Mark C. Dillon
Colleen D. Duffy
Betsy Barros
Janice A. Taylor, JJ.

Catherine A. Sheridan, Hauppauge, NY (Christopher R. Shannon of counsel), for petitioner.
Mark E. Goidell, Garden City, NY, for respondent.

The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on June 22, 1994. By decision and order on motion dated April 4, 2024, this Court, pursuant to 22 NYCRR 1240.12(c)(3)(iii), directed the respondent to show cause at a hearing before a Special Referee why a final order of suspension, censure, or disbarment should not be made based upon his conviction of improper exhibition of a dangerous weapon, in violation of Florida Statutes § 790.10, a misdemeanor. In a separate unrelated proceeding, by opinion and order dated October 9, 2024, under Appellate Division Docket No. 2023-08613, the respondent was suspended from the practice of law for a period of six months, commencing November 8, 2024 (Matter of Gainsburg, 233 AD3d 49).
Per Curiam.

[*1]
Per Curiam.

OPINION & ORDER
By affirmation dated August 25, 2023,
the Grievance Committee for the Tenth Judicial District advised the Court of the respondent's conviction of improper exhibition of a dangerous weapon, in violation of Florida Statutes § 790.10, a misdemeanor. By decision and order on motion dated April 4, 2024, on its own motion, the Court ordered that the respondent's offense does not constitute a serious crime within the meaning of Judiciary Law § 90(4)(d), and pursuant 22 NYCRR 1240.12(c)(3)(iii), the Court appointed a Special Referee and directed the respondent to show cause at a hearing before the Special Referee why a final order of suspension, censure, or disbarment should not be made based on his conviction. The respondent now moves to confirm so much of the Special Referee's report as found that the respondent's conduct did not constitute a New York crime, to disaffirm so much of the report as, inter alia, found that the respondent did not demonstrate why a final order of public discipline should not be made, and to impose a sanction no greater than a public censure. In response, the Grievance Committee cross-moves to confirm so much of the Special Referee's report as found that the respondent did not demonstrate why a final order of public discipline should not be made, to disaffirm so much of the report as found that the respondent's conduct did not constitute a New York crime, and to impose such discipline upon the respondent as this Court deems just and proper.
Underlying Criminal Conduct
On April 5, 2020, at approximately 5:30 p.m., police officers responded to a complaint of an aggravated assault on Polk Street in Hollywood, Florida. Upon the officers' arrival at a residence on Polk Street, Jorge Enrique Moreno advised them that he observed the respondent swing a baseball bat and strike two palm trees and a parking sign. Moreno further alleged that the respondent, with the baseball bat in his hand, shouted at Moreno, "don't get involved or you'll get a piece of me," and tried to engage Moreno. Moreno then went into his home to call 911. Jordana Tamar Harrison alleged that the respondent was knocking on the door of her residence while she was not home, and when she drove to her residence to observe the respondent, he threatened her while he held and swung a baseball bat and yelled, "you want a piece of me, . . . I have no home let me live with you, get out of your car pussy." Harrison fled the area in fear for her safety. Shortly after this incident, officers located the respondent at the Hollywood Marina, seated on a park bench with a small clear baggie of marijuana next to him. When the officers attempted to take the respondent into custody, the respondent told them that he was sick with COVID-19, made exaggerated coughs in their direction, and stated, "I hope I get you sick, you die, and bring it home to your families and children and they die too." The respondent was escorted to the hospital for evaluation, and during the transport, he spit on the partition between the front and rear of the police vehicle and stated, "you are a fag and your father left you because I'm fucking your mother." Upon arrival at the hospital, the respondent was not compliant in leaving the vehicle and entered the hospital shouting at hospital staff.
Following a jury trial in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, on October 28, 2022, the respondent was convicted of one charge, improper exhibition of a dangerous weapon, a lesser included misdemeanor of count one, aggravated assault. On October 31, 2022, the respondent was sentenced to a term of jail of five days with credit for five days served and a term of probation of six months, directed to undergo a psychological evaluation and complete any treatment deemed necessary, and directed to pay court fees. The respondent's probation was terminated on April 12, 2023.
The Hearing Record
A hearing was held on June 6, 2024. The Grievance Committee entered six exhibits into evidence to prove its case-in-chief. The respondent entered nine exhibits into evidence and testified on his own behalf.
The respondent testified that in April 2020, he was living with his wife and four children in Plantation, Florida. On April 3, 2020, he got into a fight with his wife and left his home in order to cool off. The respondent stayed with a friend on the night of April 3, 2020, and slept on the beach on the night of April 4, 2020.
The respondent testified that on April 5, 2020, he drove to Polk Street where he had seen a house for rent. He pulled into an empty semicircular driveway to check his tire after his tire pressure warning light turned on. While he was checking his tire, a black, four-door sedan BMW blocked him in the driveway. The BMW's windows were tinted, and therefore, he could not see who was in the BMW. He became scared and anxious, sat in the passenger seat of his car, and then got out of his car again and took out his son's baseball bat from the trunk. The respondent saw the window come down on the BMW and "saw something pointed out of it towards [him]." The respondent felt threatened and believed the bat was necessary for self-defense.
The respondent testified that eventually, the BMW left the driveway and drove away. A neighbor two houses away came out of his house and was walking toward the respondent as the BMW was pulling away. The respondent curtly and "with conviction" told the neighbor, "This doesn't concern you. Stay the fuck out of it." The neighbor went back inside his house, and the respondent got back into his car and drove to an empty marina. The respondent parked his car at the marina and took a seat on a bench to catch his breath. As he was sitting on the bench, he was surrounded by three police officers, handcuffed, and arrested.
The respondent testified that upon being arrested, he was taken to Memorial West Hospital and then sent to the main jail in Fort Lauderdale. He was released on bond three days later. When he arrived at home, he was met by police officers who involuntarily committed him for a mental evaluation. The respondent was held at Fort Lauderdale Behavioral Health Center for five days.
In mitigation, the respondent expressed remorse and testified that he was struggling with major depressive disorder and general anxiety disorder in April 2020 and did not take his prescribed medication when he left his home on April 3, 2020. The respondent testified that since [*2]then, he has been taking his medication regularly, does daily exercise, practices meditation and reflection daily, and goes to group therapy. The respondent asserted that he is part of the Rastafari community and is involved in two nonprofit organizations, the Leonard P. Howell Foundation and His and Her Majesty Repatriation Foundation, Inc.
The Special Referee's Report
The Special Referee concluded that the respondent failed to demonstrate why a final order of public discipline should not be made. The Special Referee found that the respondent's testimony was "mostly candid and truthful"; however, his narrative seemed less than complete, and his "sincerity in addressing the issue was less than enthusiastic."
The Special Referee also made a determination as to whether the respondent's conduct would constitute a New York criminal offense. The Special Referee stated,
"the record submitted does not recite all of the facts and evidence presented to the Florida court and its jury. As such, it is at best difficult to compare that to New York's laws. . . . Without so much as even a persuasive indication, the undersigned is therefore, disinclined to find that the Respondent committed acts which would constitute a New York crime,"
citing People v Jurgins (26 NY3d 607). Nevertheless, the Special Referee concluded that "[t]hat finding, however, cannot erase the facts that he was so convicted and so sentenced, nor should they be ignored."
In mitigation, the Special Referee noted the respondent's domestic and mental health issues, the lack of needed medications at the time of the misconduct, and the respondent's history of pro bono service.
Findings and Conclusion
We find that the Special Referee properly concluded that the respondent failed to meet his burden of establishing why the Court should not issue a final order of public discipline. The Special Referee's determination that the respondent's conduct did not constitute a New York crime is improper, however, as Judiciary Law § 90(4) and 22 NYCRR 1240.12 do not require the out-of-state crime of which the respondent was convicted to also be a New York crime.
Accordingly, the respondent's motion to confirm so much of the Special Referee's report as found that the respondent's conduct did not constitute a New York crime and to disaffirm so much of the report as, inter alia, found that the respondent did not demonstrate why a final order of public discipline should not be made is denied. The Grievance Committee's cross-motion to confirm so much of the Special Referee's report as found that the respondent did not demonstrate why a final order of public discipline should not be made and to disaffirm so much of the report as found that the respondent's conduct did not constitute a New York crime is granted.
In determining an appropriate measure of discipline to impose, we have considered the respondent's prior disciplinary history, the circumstances of the respondent's arrest, and his conviction by a jury of improper exhibition of a dangerous weapon.
Under the totality of the circumstances, we find that the respondent's conduct warrants a suspension from the practice of law for a period of six months (see Matter of Batsiyan, 199 AD3d 80).
LASALLE, P.J., DILLON, DUFFY, BARROS and TAYLOR, JJ., concur.
ORDERED that the respondent's motion to confirm so much of the Special Referee's report as found that the respondent's conduct did not constitute a New York crime and to disaffirm so much of the report as, inter alia, found that the respondent did not demonstrate why a final order of public discipline should not be made is denied; and it is further,
ORDERED that the Grievance Committee's cross-motion to confirm so much of the Special Referee's report as found that the respondent did not demonstrate why a final order of public discipline should not be made and to disaffirm so much of the report as found that the respondent's conduct did not constitute a New York crime is granted; and it is further,
ORDERED that the respondent, Barry Robert Gainsburg, is suspended from the practice of law for a period of six months, effective immediately, and continuing until further order [*3]of this Court. The respondent shall not apply for reinstatement earlier than October 7, 2026. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), and (3) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Barry Robert Gainsburg, shall continue to comply with the rules governing the conduct of disbarred or suspended attorneys (see id.); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Barry Robert Gainsburg, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Barry Robert Gainsburg, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
LASALLE, P.J., DILLON, DUFFY, BARROS and TAYLOR, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court